IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

    vs.                                                No. CR 03-2375 LH

FLOYD VALDEZ

      Defendant-Appellant.

**MEMORANDUM OPINION AND ORDER**

      **THIS MATTER** comes before the Court on appeal from the judgment of conviction and sentence of United States Magistrate Judge Don J. Svet. The Appellant was convicted at a bench trial of placing or allowing unauthorized livestock to enter or be in the National Forest System in violation of 36 C.F.R. 261.7(a) and not removing unauthorized livestock from the National Forest System when requested by a forest officer in violation of 36 C.F.R. 261.7(b). Judge Svet sentenced the Defendant to one year probation and a $500 fine.

I.  Standard of Review

      "A defendant may appeal a magistrate judge's judgment of conviction or sentence to a district judge within 10 days of its entry." FED. R. CRIM. P. 58(g)(2)(B). "The defendant is not entitled to a trial de novo by a district judge. The scope of the appeal is the same as in an appeal to

the court of appeals from a judgment entered by a district judge." FED. R. CRIM. P. 58(g)(2)(D). The Court will "review the record for sufficiency of the evidence de novo. Evidence is sufficient to support a conviction if a reasonable jury could find the defendant guilty beyond a reasonable doubt, given the direct and circumstantial evidence, along with reasonable inferences therefrom, taken in a light most favorable to the government. Rather than examining the evidence in bits and pieces, we evaluate the sufficiency of the evidence by considering the collective inferences to be drawn from the evidence as a whole." *United States v. Wilson*, 107 F.3d 774, 778 (10th Cir. 1997).

II.  Analysis

A.  36 C.F.R. 261.7(a).

Both parties argue that *United States v. Osguthorpe*, 13 F.Supp.2d 1215 (D. Utah 1998), the only case interpreting 36 C.F.R. 261.7(a), construed the regulation as including a *mens rea* requirement for a conviction. The Court finds Judge Benson's thorough analysis of the issue persuasive, and agrees that a conviction under the regulation requires proof that the Defendant acted recklessly, knowingly, or purposely in allowing his livestock onto National Forest lands.

"The existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence." *Dennis v. United States*, 341 U.S. 494, 500 (1951). The plain language of the regulation supports the conclusion that this provision is not an exception to that rule. Both "placing" and "allowing" connote that some manner of volition be present in the acts. There is no suggestion here that the Defendant actively placed his livestock onto Forest Service lands for which he did not have a grazing permit, only that he "allowed" his cattle to "be in the National Forest System." 36 C.F.R. 261.7(a). Even "allowing," though, carries a certain degree of purpose, even if in the negative sense. For example, among the definitions of "allowing" is "to permit by

neglect" and "to permit something to happen or to exist."  The Random House Dictionary of the English Language (2d ed. 1987).

In *Osguthorpe*, the United States argued that the 1977 amendment to the regulation removed any *mens rea* element that had previously been required.  "Prior to 1977, the regulation prohibited '*willfully* allowing livestock to enter upon or to be upon such lands . . . .'  35 F.R. 3165 (1970) (emphasis added).  The amendment replaced 'willfully allowing' with the words 'placing or allowing.'"  *Osguthorpe*, 13 F.Supp.2d at 1217.  As Judge Benson wrote, "If the Department of Agriculture had wanted to write a strict liability regulation it could have easily done so.  'Any person's sheep found on Forest land is guilty of an offense,' would be a strict liability regulation.  The present regulation is not."  *Id.*

In *Morissette v. United States*, 342 U.S. 246, 263 (1952), the Court found that "mere omission from [the applicable criminal statute] of any mention of intent will not be construed as eliminating that element from the crimes denounced."  The Supreme Court has also recognized the "generally disfavored status" of strict liability offenses. *United States v. United States Gypsum, Co.*, 438 U.S. 422, 438 (1978).  Furthermore, "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity."  *Rewis v. United States*, 401 U.S. 808, 812 (1971).  It is therefore clear that 36 C.F.R. 261.7(a) includes a *mens rea* element for conviction.

At this point, the issue becomes what level of *mens rea* is required for conviction.  "Few areas of criminal law pose more difficulty than the proper definition of the *mens rea* required for any particular crime."  *United States v. Bailey*, 444 U.S. 394, 403 (1980).  This is especially true where, as in the present case, "the language of the Act provides minimal assistance in determining what standard of intent is appropriate, and the sparse legislative history of the criminal provisions is similarly unhelpful."  *United States Gypsum Co.*, 438 U.S. at 443-44.

In *Osguthorpe*, Judge Benson chose from the Model Penal Code's four levels of *mens rea* in deciding the issue before him. *Osguthorpe*, 13 F.Supp.2d at 1218-19. "This 'hierarchy of culpable states of mind' is listed in 'descending order of culpability' with purposely being the most onerous standard and negligently the most lenient."[1]  *Id.* at 1219, *quoting Bailey*, 444 U.S. at 404.  The Supreme Court has often turned to the Model Penal Code for guidance in cases involving *mens rea* determinations as well. *See Bailey*, 444 U.S. at 404 (adopting "knowledge" from the Model Penal Code as the appropriate level of *mens rea* where the statute in question failed to indicate); *United States Gypsum Co.*, 438 U.S. at 444 (concluding that the Model Penal Code is a source of guidance

---

[1] Section 2.02(2) of the Model Penal Code defines each level of culpability as the following:

**(a) Purposely.**

A person acts purposely with respect to a material element of an offense when:
(i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and
(ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.

**(b) Knowingly.**

A person acts knowingly with respect to a material element of an offense when:
(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and
(ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

**(c) Recklessly.**

A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.

**(d) Negligently.**

A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and purpose of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

in determining the appropriate level of *mens rea* and adopting "knowledge" as such level).

The aforementioned legislative history informs this analysis as well. The Court agrees with Judge Benson that the 1977 amendment to 36 C.F.R. 261.7(a), which removed "willfully" from the regulation, did not dispose of a *mens rea* element altogether. But, the amendment was clearly undertaken for the purpose of lowering the requisite level of *mens rea* from wilfulness. As Judge Benson found, requiring a showing that the Defendant acted "purposely" to convict him of a violation of 36 C.F.R. 261.7(a) is thus clearly inappropriate. *Osguthorpe*, 13 F.Supp.2d at 1220. "Because it is true that wilfully and knowingly are often used interchangeably, it would not make sense to adopt a knowingly standard in lieu of the elimination of its equivalent in the 1977 Amendment." *Id.*

As Judge Benson also found, the rule of lenity persuades the Court that the requisite *mens rea* for a conviction for violating 36 C.F.R. 261.7(a) should be recklessness. Unlike Judge Benson's decision in *Osguthorpe*, however, the Defendant's regulatory construction argument does not provide a defense in this case. The evidence at trial indicates that the "to permit by neglect" definition of "allowing" applied to the Defendant's actions. The Defendant was informed that his cattle were on National Forest lands. He told Officer Luciano Sandoval, whose testimony Judge Svet expressly credited, that the cattle had entered the National Forest through or over a fence in disrepair. The Forest Service officers who testified at trial repaired the fence themselves, with apparently minimal burden. By ignoring the condition of the fence and allowing his cattle to graze freely on his land with the fence in that condition, when he did not have permission to graze on the adjacent public lands, the Defendant consciously disregarded a substantial and unjustifiable risk that his cattle would enter Forest Service lands as a result of his conduct.

The Defendant argues that he had not "allowed" his cattle to be on National Forest lands for

the purposes of the regulation "if his cattle are released by way of a cut fence by the action of a third party unknown to the owner and thereafter moved onto the government's property." Def.-Appellant's Brief in Chief at 5. But the evidence adduced at trial indicated that the Defendant was aware of the condition of the fence and the likelihood of his cattle would enter public lands on which they were not authorized to be, and chose to disregard those risks. The Defendant's neglect thus fits the definition of "allowing." The Court therefore finds that the evidence was sufficient for Judge Svet to find that the Defendant had recklessly allowed his cattle to be on National Forest lands.

The Defendant also argues that he has a permit to graze his cattle on a particular Forest Service allotment, and the regulation does not prohibit cattle from moving from one allotment to another. In fact, the regulation prohibits "allowing unauthorized livestock to enter or be in the National Forest System...." 36 C.F.R. 261.7(a). The Defendant's permit allowed his cattle to be on the Jarita Mesa allotment. Def's Ex. 3. His cattle were found on the Tio Gordito allotment, for which the Defendant did not have a grazing permit. On the latter land, then, the Defendant's cattle were "unauthorized livestock." Moreover, as the United States points out, the Defendant's cattle were located by Officer Sandoval on the Tio Gordito allotment only about a mile from the Defendant's property. The Defendant himself concedes that the cattle originated from his property, not the Jarita Mesa allotment for which he has a grazing permit. The day after he was cited by the Forest Service, the Defendant removed his cattle from Forest Service land and returned them to his private property.

The latter fact belies the Defendant's arguments that the cattle in question did not belong to him, belonged to the Defendant and his brothers collectively, or belonged to a Mr. Chacon, who had a permit for the Tio Gordito allotment. More significantly, though, this appeal is based on a review of the record of the Defendant's trial. The Defendant offered only three exhibits and no witnesses in his defense. There was no evidence whatsoever that the cattle belonged to anyone other than the

Defendant. Indeed, the only evidence regarding ownership of the cattle was testimony that the cattle wore a brand registered to the Defendant and his brothers. Although it is somewhat less than clear why the Defendant's brothers were not also charged with these violations, that is not a defense to the charges against the Defendant.

B.  36 C.F.R. 261.7(b).

*Osguthorpe* does not apply to 36 C.F.R. 261.7(b), which does not include a *mens rea* requirement. That regulation prohibits "not removing unauthorized livestock from the National Forest System or other lands under Forest Service control when requested by a forest officer." *Id.* There is no question that the Defendant was informed that his cattle were on National Forest lands for which he did not have a grazing permit, that he was requested to remove them by a Forest Service officers, or that he did not remove the cattle when requested to do so. Indeed, the Defendant argues only that he should not have been required to remove his cattle, which is in no way a defense to this charge. The evidence before Judge Svet on this charge was certainly sufficient for him to convict the Defendant.

III.  Conclusion

Viewing the record as a whole and the inferences to be drawn therefrom in the light most favorable to the United States, the Court finds that the evidence was sufficient for Judge Svet, as the trier of fact, to find the defendant guilty beyond a reasonable doubt.

**IT IS, THEREFORE, ORDERED** that the judgment of the Magistrate Judge is **affirmed**.

**IT IS FURTHER ORDERED** that the Defendant's Motion for Stay of Judgment Pending Appeal is **denied** as moot.

**IT IS SO ORDERED.**

_____
**SENIOR UNITED STATES DISTRICT JUDGE**